Louisville, Evansville & St. Louis Consolidated Railroad Company v. Kelly.

No. 881.

Filed April 26, 1893.

———◆———

No. 862.

LOUISVILLE, EVANSVILLE & ST. LOUIS CONSOLIDATED RAILROAD COMPANY v. KELLY.

CONTRIBUTORY NEGLIGENCE.—*Railroad Crossing.*—*Injury.*—*Diligence on Part of Traveler.*—Where a teamster with his horse and wagon, about to enter upon a railroad crossing, waited at the foot of the approach of such crossing until an approaching freight train had passed from the west, and where it further appears, that before the freight train had passed, and after the freight train had passed 150 feet, and while he was yet at the foot of the approach, about 40 feet distant from the tracks, he looked both east and west, and listened for trains, and saw and heard none except the freight; that after the freight train had passed 150 feet, he started to cross the tracks, and after he had crossed the south track and was en-

tering upon the north track, he discovered a passenger train approaching on the north track from the east, 390 feet distant, at a speed of 40 miles an hour, without having given any signals; and that, before he could cross the track his wagon was caught and the injury occasioned, the passenger train not being visible from the crossing more than 700 feet because of a curve in the tracks, the Appellate Court can not say as a question of law, on these facts, which the evidence tends to establish, that the teamster was guilty of contributory negligence.

From the Floyd Circuit Court.

*A. Dowling*, for appellant.

*G. H. Voigt* and *E. B. Stotsenburg*, for appellee.

GAVIN, J.—This was an action by appellee to recover damages by reason of appellant's cars having run into his wagon, at a crossing of its railroad over a highway.

Appellant's contention is that, under the facts as established by the evidence, appellee is not shown to have been free from contributory negligence.

The principal facts relevant to the point under consideration are, as indicated by some of the evidence, at least, as follows: The railroad over which appellant's trains were running was a double track roadbed, about twenty-five feet wide, the rails of each track four feet 9 inches apart, with seven feet between tracks, and two and one-half feet of level ground on the outside of each track. Between the tracks and rails, boards had been laid which had rotted out, and holes were left on each side of the track rails, making the crossing quite rough. The tracks were laid on an embankment ten or fifteen feet high. From the top of the embankment, the highway sloped down a distance of thirty or forty feet to the general level of the highway, which was a main thoroughfare between Jeffersonville and New Albany. Numerous trains passed daily over the road. Appellee was familiar with the crossing. On the occasion of the accident, appellee approached the crossing from the south, with a loaded wagon drawn by one horse. When near the foot of the grade, he saw a freight

train approaching from the west, which was about forty or fifty yards away. He looked to the east and saw no train. At the foot of the grade he stopped for the freight to pass, it being on the south track, the one nearest to him. After the freight passed he looked east for a train, and neither saw nor heard any. Then he started his horse up the grade. When he got on top of the grade he looked and saw appellant's passenger train approaching on the north track. It was then 130 yards away, coming from the east, backing and running at the rate of forty miles per hour. Appellee's horse was then entering upon, or just about to enter, the north track. No signals were given by the approaching train. Appellee believed he could then more safely go forward than attempt to halt and back out, because, as he says, by the time he could check his horse the train would have been on him, and, by reason of the roughness of the crossing, he probably could not have backed out. Considering the character of the crossing and all the circumstances, there was evidence to support the jury in finding that there was reasonable ground for this belief. Appellee, therefore, whipped up his horse and succeeded in getting across the track, but the hind end of his wagon was caught by the step of the car, and thus the injury was occasioned.

Appellee himself testified that when he started up the grade the freight had gone two or three rods past the crossing, but the evidence of two other witnesses supports the statement that the freight was 150 feet beyond the crossing when he started. Had proper signals been given appellee could have heard the whistling before going upon the top of the grade.

Appellant's civil engineer testifies that the track ran straight east for 700 feet, when it began to curve to the south. From the crossing to the curve, there was a clear view of the track. The engineer and others also testified that a train on the track was visible from the slope of the

grade even though 1,405 feet distant. Appellee, however, testified to the presence of certain trees at the bend, and that "till you get upon the track those trees are in the way, and you could not see the train till it came around the bend."

Appellant's witnesses testify that the two trains passed one another 200 yards from the crossing, and that there was a clean gap of 200 yards between the approaching passenger train and the crossing.

Under these facts, and with this evidence, we are of the opinion that the determination of the jury, upon the question of contributory negligence, can not be reversed by this court. In considering the evidence, we are required to take that view of it which is most favorable to the appellee.

It is settled law that where the dangerous character of a crossing is known, care must be exercised proportionate to the known danger. It is also unquestionable that one knowingly approaching a railroad crossing must look and listen for approaching trains. *Louisville, etc., R. W. Co.* v. *Stommel*, 126 Ind. 35; *Mann* v. *Belt R. R. and Stockyard Co.*, 128 Ind. 138.

Under the evidence in this case, appellee stopped and looked and listened, when thirty or forty feet away, and at the foot of the grade, and neither saw nor heard anything. Under this evidence, the jury were authorized to find that the approaching train was not visible until within 700 feet of the crossing, regardless of the freight train. It was actually seen by appellant when 390 feet distant. In the absence of the freight train, then, this passenger train might have been seen by appellee, before it was seen, for a trifle over five seconds of time, because it was running at nearly sixty feet per second. Appellee had his horse to manage, and it was also incumbent on him to be on the lookout for trains from the other direction as well. We think it is plainly impossible for this court to say, as a matter of

law, under the facts of this case, that there would have been any negligence in his failure to see this train for so short a space of time, even had the other track been clear.

It is not contended by appellant that the act of appellee in attempting to continue crossing, after he did discover the approaching train, was in itself necessarily negligence. Having been brought into the presence of this imminent danger by the fault of appellant, and without fault on his own part, it was for the jury to say whether or not he used such care as was then, in the presence of the danger, appropriate. *Woolery, Admr.,* v. *Louisville, etc., R. W. Co.,* 107 Ind. 381; *Indianapolis, etc., R. R. Co.* v. *Stout, Admr.,* 53 Ind. 143.

The case relied upon by appellant, *Marty* v. *Chicago, etc., R. Co.,* (Minn.) 32 Am. and Eng. R. R. Cas. 107, is not applicable, because there the injured party drove on the track "*immediately*" after the first train passed, while here there is evidence that appellee did not start his team for the track, which was then at least forty feet distant, until the first train had passed over 150 feet.

We have examined the evidence with care, and are satisfied that, under the rules of law, we would not be justified in saying that appellee was not free from contributory negligence.

Judgment affirmed.

REINHARD, C. J., was absent.

